UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CEDRIC O'NIEL SIMPSON,

        Plaintiff,

v.

UNKNOWN ZAMPESE et al.,

        Defendants.

_____/

Case No. 2:25-cv-74

Honorable Ray Kent

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Sebally, Bolten, Hoult, Schroeder, Negernellie, Justice and Unknown Parties. The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claim against Defendants Zampese. Plaintiff's Eighth Amendment claims against Defendants Zampese and Faulk remain in the case. Plaintiff's motion (ECF No. 4) for the appointment of counsel will be denied.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer Unknown

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Zampese, Inspector Unknown Sebally, Grievance Coordinator Q. Bolten, Assistant Deputy Warden Unknown Hoult, Warden Sarah Schroeder, Registered Nurses Khrissy Negernellie and Unknown Justice, Doctor Unknown Faulk, and Unknown Parties MBP Administrative First Shift Lieutenant and Sergeant. Plaintiff names Defendants in their personal and official capacities.

Plaintiff alleges that on August 25, 2024, while housed in a mental health observation cell, Defendant Zampese refused to give Plaintiff his breakfast in retaliation for Plaintiff throwing food at his window on the previous day. (ECF No. 1, PageID.4.) At breakfast on August 26, 2024, Defendant Zampese took Plaintiff's food loaf out of the wrapper and placed it directly on the unsanitized metal bars and said "eat ni**er." (*Id.*) This prompted Plaintiff to ask to speak to the shift commander, but Defendant Zampese refused to notify his suupervisor. (*Id.*)

Plaintiff asserts that Defendant Zampese's treatment of him caused him to become suicidal and that he repeatedly attempted to hang himself with his gown while Defendant Zampese cheered him on, calling him a ni**er and telling him to kill himself. (*Id.*) Plaintiff then showed Defendant Zampese that he had a razor and broke the razor in half and swallowed half of the razor while Defendant Zampese watched. (*Id.*)

Defendant Zampese continued to refuse to notify the shift command, so Plaintiff took the other half of the razor and began cutting himself. (*Id.*) Once Plaintiff began bleeding, he screamed for help for twenty minutes. (*Id.*) Defendant Zampese was making rounds and saw Plaintiff bleeding but refused to summon help. (*Id.*) Plaintiff kept screaming until Defendants Negernellie and Justice arrived. Plaintiff explained that he was suicidal and described Defendant Zampese's conduct. (*Id.*) Defendants Negernellie and Justice bandaged Plaintiff's wounds, took his vitals, gave him an Ensure to drink, and spoke with him for approximately forty minutes. (*Id.*) Defendant RNs said that they would notify their supervisor and let the doctor know that Plaintiff had

4

swallowed a razor. (*Id.*) Plaintiff states that on August 26, 2024, Defendant Faulk refused to give Plaintiff an x-ray or to send him to the hospital for the razor Plaintiff had swallowed. (*Id.*)

Plaintiff alleges that when he attempted to exhaust his administrative remedies, his due process rights were violated, and he was retaliated against. (*Id.*, PageID.4–5.) Plaintiff states that Defendant Bolten refused to process his grievance and purposefully denied and rejected his grievances as untimely. (*Id.*, PageID.5.) Defendant Sebally denied Plaintiff's step I grievance and falsified documents to say that none of Plaintiff's claims regarding the events of August 25 and 26, 2024, were truthful, even though the events occurred on camera. (*Id.*) Defendants Hoult and Schroeder failed to investigate the issue and rejected and/or denied Plaintiff's grievances and appeals. (*Id.*)

Plaintiff seeks damages and equitable relief. (*Id.*, PageID.6.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

5

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Retaliation

Plaintiff claims that Defendants' conduct was motivated by a desire to retaliate against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

6

Plaintiff states that Defendant Zampese retaliated against him for throwing food at his window by depriving him of his breakfast on August 25, 2024, and by placing his food loaf on unsanitary metal bars during breakfast on August 26, 2024. (ECF No. 1, PageID.4.) However, Plaintiff's act of throwing food was not protected conduct because such behavior fell within the definition of "creating a disturbance" under the MDOC Policy Directive 03.03.105B governing prisoner misconduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). *See also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Therefore, because Plaintiff fails to allege that he engaged in protected conduct prior to the alleged misconduct of Defendant Zampese, he fails to state a retaliation claim against this Defendant.

Plaintiff also makes a conclusory assertion that when he attempted to exhaust administrative remedies, Defendants Bolten, Sebally, Hoult, and Schroeder retaliated by failing to investigate the issue, falsifying responses, and preventing him from submitting a timely appeal. (ECF No. 1, PageID.5.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

7

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation as to Defendants Bolten, Sebally, Hoult, and Schroeder. He has not presented any facts to support his conclusion that Defendants retaliated against him because of his use of the grievance system. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, his speculative allegations against Defendants Bolten, Sebally, Hoult, and Schroeder fails to state a First Amendment retaliation claim.

### B. Eighth Amendment

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

9

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

To satisfy the subjective component of the deliberate indifference standard, a plaintiff must show both that a prison official "subjectively perceived facts from which to infer substantial risk to the prisoner" and that he "did in fact draw the inference." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "An official's failure to alleviate a significant risk that *he should have perceived but did not*, while no cause for commendation," cannot support a claim of deliberate indifference. *Farmer*, 511 U.S. at 838 (emphasis added). An official's subjective knowledge, however, may be inferred from the fact that an inmate's "substantial risk" of harm was "obvious." *Id.* at 842. In the context of prison suicides, this means that it must have been obvious that there was a strong likelihood that an inmate would attempt suicide. *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

"[I]t is not enough to establish that an official may have acted with deliberate indifference to some *possibility* of suicide, or even a *likelihood* of suicide; the test is a *strong likelihood* of suicide." *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013); *see also Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660-61 (6th Cir. 1994) (holding that a prison official must have "knowledge of a strong likelihood," not just a "mere possibility," that an inmate will attempt suicide). This is a high bar and typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm. *See Downard v. Martin*, 968 F.3d 594, 600–601 (6th Cir. 2020) (citing *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014) (collecting cases).

In this case, Plaintiff was being housed in an observation cell and told Defendant Zampese that he was suicidal. Plaintiff states that while he was attempting to hang himself with his gown,

Defendant Zampese cheered him on, calling him a ni**er and told him to kill himself. (ECF No. 1, PageID.4.) Plaintiff states that he swallowed part of a razor blade while Defendant Zampese watched and that Defendant Zampese refused to summon medical assistance. Plaintiff also states that he began cutting himself with the remaining part of the razor and that Defendant Zampese was aware of this fact but continued to refuse to obtain help for Plaintiff. (*Id.*) The Court concludes that at this point in the litigation, Plaintiff has stated facts which sufficiently support an Eighth Amendment claim against Defendant Zampese.

Plaintiff also claims that Defendants Negernellie, Justice, and Faulk violated the Eighth Amendment when they were deliberately indifferent to his serious medical needs. Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

To satisfy the objective component in the context of a denial of medical care claim, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer*, 511 U.S. at 834. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem

11

the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

With respect to Defendant RNs Negernellie and Justice, Plaintiff alleges that they responded to his calls for help by bandaging his wounds, taking his vital signs, having him drink an Ensure supplement, and talking with him about his situation for approximately 40 minutes. (ECF No. 1, PageID.4.) Defendants Negernellie and Justice also informed the doctor that Plaintiff had swallowed a razor. (*Id.*) Plaintiff fails to allege any facts showing that Defendants Negernellie and Justice were deliberately indifferent to his medical needs. Therefore, Plaintiff fails to state Eighth Amendment claims against Defendants Negernellie and Justice.

As to Defendant Faulk, Plaintiff alleges that he was made aware of the fact that Plaintiff had swallowed a razor and refused to order an x-ray or to send Plaintiff to the hospital. The Court notes that Plaintiff's allegations regarding Defendant Faulk are somewhat conclusory and that Plaintiff fails to allege that he suffered any injury as a result of Defendant Faulk's inaction. However, at this point in the litigation, Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against Defendant Faulk. Therefore, the Court will not dismiss this claim on initial review.

      **C.**    **Interference with Grievance Procedure**

Plaintiff claims that Defendants failed to properly process his grievances and grievance appeals in violation his due process rights. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

13

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Nor was Plaintiff's right to petition government violated by Defendant's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed,

14

Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

### D. Defendants Unknown Parties First Shift Lieutenant and Sergeant

Plaintiff names "Marquette Branch Prison Administration First Shift Lt and Sgt" (ECF No. 1, PageID.3) as Defendants, but fails to allege any specific facts regarding their conduct in the body of his complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, the Court will dismiss any claims against Defendants Unknown Parties for failure to state a claim.

### III.    Motion to Appoint Counsel

Plaintiff has requested the appointment of counsel in this case. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Therefore, the Court will deny Plaintiff's motion (ECF No. 4) for the appointment of counsel.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*, and the Court will deny Plaintiff's motion (ECF No. 4) for the appointment of counsel. Having conducted the review required by the PLRA, the Court determines that Defendants Sebally, Bolten, Hoult, Schroeder, Negernellie, Justice and Unknown Parties will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for

failure to state a claim, Plaintiff's retaliation claim against Defendants Zampese. Plaintiff's Eighth Amendment claims against Defendants Zampese and Faulk remain in the case.

An order consistent with this opinion will be entered.

Dated:   June 6, 2025                              /s/ Ray Kent
                                                                  Ray Kent
                                                                  United States Magistrate Judge